FILED
IN OPEN COURT

AUG 25 2015

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.1:11-cr-308 |
| | ) | |
| ALEXANDER MONROY MURILLO (17) | ) | The Honorable Liam O'Grady |
| also known as "Mango," | ) | |
| also known as "Fruta," | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

Were this matter to go to trial, the United States of America would prove the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From in or about at least July 2009 and continuing thereafter up to November 23, 2011, in Colombia, Honduras, and elsewhere, the defendant, ALEXANDER MONROY MURILLO, also known as "Mango," also known as "Fruta," and others, did knowingly and intentionally combine, conspire, confederate, and agree to commit the following offense against the United States: to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959.

2. It was part of the conspiracy that the defendant's conspirators operated a cocaine production laboratory capable of producing approximately 250 kilograms of cocaine per day. This defendant, who was based in Honduras, introduced members of the Colombian based drug-trafficking organization to Mexican drug cartel members in Honduras. After the defendant introduced his Colombian conspirators to these Mexican cartel members, these cartel members

arranged to purchase the cocaine from the Colombian drug-trafficking organization in Honduras, transport it to the United States, and sell it in the United States. The defendant was paid a fee for each such transaction. On several occasions, other members of the conspiracy traveled from Colombia to Honduras, where this defendant facilitated meetings between the Colombian conspirators and high-level Mexican cartel members. This defendant also was responsible for collecting proceeds for the sale of the cocaine and arranging to have it transported back to Colombia. Other conspirators then used these funds to pay members of the conspiracy and purchase additional cocaine.

3. It was further part of the conspiracy that the defendant's conspirators used tractor trailers and other trucks with hidden compartments to transport multi-thousand kilogram shipments of cocaine from the Colombian interior to the northern coast of Colombia.

4. It was further part of the conspiracy that the defendant's conspirators constructed shipping containers with hidden compartments in order to smuggle cocaine from ports in Cartagena and Barranquilla, Colombia, to Honduras, and then on to Mexico and the United States.

5. It was further part of the conspiracy that the defendant's conspirators laundered the proceeds of their cocaine sales in the United States in order to conceal their activities while converting and repatriating at least tens of millions of dollars in United States currency to Colombia.

6. It was further part of the conspiracy that the defendant's conspirators then reinvested portions of the proceeds of their United States cocaine sales into the cocaine production, transportation, and distribution business.

7. On or about September 2, 2010, the defendant's conspirators transported and caused to be transported approximately 1,110 kilograms of cocaine hidden in secret compartments in the

trailers of two gravel trucks. These trucks were intercepted by the Colombian National Police in Santander and Cesar, Colombia.

8. On or about September 16, 2010, the defendant's conspirators transported and caused to be transported approximately 1,500 kilograms of cocaine hidden in secret double end compartments attached to the walls of the tank of a tractor trailer. This truck was intercepted by the Colombian National Police on the highway connecting Cienaga to Barranquilla, a city on the Caribbean Sea.

9. On or about November 19, 2010, the defendant's conspirators transported and caused to be transported approximately 3,000 kilograms of cocaine and approximately 25 kilograms of unrefined cocaine, concealed in false ceiling compartments in two 40 foot shipping containers. These shipping containers were destined to be transported by boat from Barranquilla to Honduras. The Colombian National Police seized these shipping containers and the cocaine hidden therein.

10. On or about January 3, 2011, the defendant's conspirators transported and caused to be transported to the Port Society at Cartagena, a city located on the Caribbean Sea, a 40 foot shipping container outfitted with secret compartments containing approximately 1,500 kilograms of cocaine. This shipping container and cocaine hidden therein, destined for Honduras, was intercepted by the Colombian National Police before it could be exported.

11. During the course and in furtherance of his participation in the conspiracy, the defendant was personally involved in the manufacture and distribution of at least 450 kilograms of cocaine knowing or intending that it would be unlawfully imported into the United States, or it was reasonably foreseeable to the defendant that his co-conspirators manufactured and distributed at least that amount knowing or intending that it would be unlawfully imported into the United States, all in furtherance of the conspiracy.

12. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not include each and every fact known to the defendant or the government, and it is not intended to be a full enumeration of all of the facts surrounding the case.

13. The actions of the defendant as recounted above were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

14. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____
Michael P. Ben'Ary
Lynn E. Haaland
Assistant United States Attorneys

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*Alexander Monroy*
ALEXANDER MONROY MURILLO
Defendant

Defense Counsel's Signature

I am the attorney for ALEXANDER MONROY MURILLO. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

David Fernandez, Esq.
Dontae Bugg, Esq.
Counsel for the Defendant